**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

BASCIANI FOODS, INC., et al.,

           Plaintiffs,

v.                                  CIVIL ACTION NO.  3:09-cv-01182

ROY ENTERPRISES, INC., et al.,

           Defendants.

**MEMORANDUM OPINION AND ORDER**

      Pending before the court are a Motion for Summary Judgment filed by the plaintiffs, Basciani Foods, Inc. ("Basciani") and The Horton Fruit Co. ("Horton") [Docket 35], as well as a Motion for Summary Judgment filed by the intervenor-plaintiff, Monterey Mushrooms, Inc. ("Monterey") [Docket 37].  For the following reasons, the motions are **GRANTED**.  Additionally, the court **DIRECTS** Horton and Monterey to file an accounting of pre-judgment interest within thirty (30) days, and **DIRECTS** Monterey to file an accounting of its attorneys' fees and costs within thirty (30) days.

**I.**      **Background**

      Basciani, Horton, and Monterey are wholesale sellers of produce in interstate commerce, and are licensed pursuant to the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499e.  On October 28, 2009, Basciani and Horton brought suit against the defendants, Roy Enterprises, Inc., d/b/a Buck's Fruit Co. ("Buck's"), Carolyn Roy, and C. Randall Blatt.  Monterey then filed an unopposed motion to intervene in this action as a plaintiff on November 18, 2009,

which the court granted on December 9, 2009. On December 31, 2009, Monterey filed its Complaint in Intervention. Basciani, Horton, and Monterey allege that Buck's purchased and received produce from them without paying for it.

On April 6, 2010, Basciani and Horton served the defendants with a Request for Production of Documents and Requests for Admissions, to which the defendants did not respond. Monterey served the defendants with discovery requests, including Requests for Admissions, on April 28, 2010. The defendants responded to Monterey's Requests for Admissions on June 11, 2010. Basciani and Horton then moved for summary judgment against the defendants on July 9, 2010, and Monterey moved for summary judgment on July 14, 2010. Despite a stipulation between the parties extending the deadline for the defendants' response, the defendants did not respond to the summary judgment motions. Accordingly, the summary judgment motions are now ripe for adjudication.

The plaintiffs and the intervenor-plaintiff assert that the following facts are undisputed. In 2008 and 2009, Basciani sold and delivered to Buck's produce worth $13,424.65, for which it has not been paid. In 2009, Horton sold and delivered to Buck's produce worth $11,907.50, for which it has not been paid. Between 2007 and 2009, Monterey sold and delivered to Buck's produce worth $29,865.75, for which it has not received full payment. Basciani, Horton, and Monterey each provided Buck's with invoices in their ordinary course of business. The invoices reported the amount due and contained the language required to preserve the sellers' interests under the trust provisions of the PACA. *See* 7 U.S.C. § 499e(c)(4).[1]

---

[1] More specifically, the PACA provides that a licensee "may use ordinary and usual billing or invoice statements to provide notice of the licensee's intent to preserve the trust." 7 U.S.C. § 499e(c)(4). The statement or invoice must include the following language: "The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by

(continued...)

With respect to these transactions, Buck's was operating as a commission merchant, dealer, or broker subject to the PACA and held a license thereunder.  *See* 7 U.S.C. § 499a(b)(5) - (7).  Moreover, individual defendants Roy and Blatt were in a position of control over the PACA trust assets.  More specifically, Roy and Blatt are identified as the principals of Buck's on its PACA license, are listed as president and vice president, respectively, of Buck's with the West Virginia Secretary of State's office, and jointly hold check-signing authority for Buck's, as evidenced by their bank signature cards.

## II.     Summary Judgment Standard

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor."  *Anderson*, 477 U.S. at 256.

---

[1](...continued)

section 5(c) of the Perishable Agricultural Commodities Act, 1930, (7 U.S.C. 499e(c)).  The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivable of proceeds from the sale of these commodities until full payment is received."  *Id.*  It is undisputed that the invoices in question contained the required language.

Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *Ross v. Comm'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *abrogated on other grounds*, 490 U.S. 228 (1989).

In this case, the defendants did not respond to the summary judgment motions. "Although the failure of a party to respond to a summary judgment motion may leave uncontroverted those facts established by the motion, the moving party must still show that the uncontroverted facts entitle the party to 'a judgment as a matter of law.'" *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 415 (4th Cir. 1993). Accordingly, the court must still review the pending summary judgment motions under the ordinary summary judgment standard to determine whether the plaintiffs and the intervenor-plaintiff are entitled to judgment as a matter of law.

## III.    Discussion

### A.    *PACA Trust Claim*

The PACA, which was enacted in 1930 in order to suppress unfair and fraudulent business practices in the marketing of produce in interstate commerce, was amended in 1984 to grant sellers of perishable agricultural commodities special protection. Due to their need to quickly move their inventory, such sellers "were often required to become unsecured creditors of their purchasers,

whose credit they were often unable to verify." *Nickey Gregory Co. v. Agricap, LLC*, 597 F.3d 591, 595 (4th Cir. 2010).  In those circumstances, produce sellers were often unable to collect on their debts.  *Id.*  As a solution, Congress created in the PACA a "non-segregated 'floating' trust," which forms upon the sale of perishable agricultural commodities, to protect sellers.  7 C.F.R. § 46.46(b).  The trust consists of the produce itself, the inventory or products derived from the produce, and all receivables or proceeds from the sale thereof.  7 U.S.C. § 499e(c).  Although commingling of trust assets is contemplated, the trustee of a PACA trust is obligated "to maintain trust assets in a manner that such assets are freely available to satisfy outstanding obligations to sellers."  7 C.F.R. § 46.46(d)(1).  Any act by the trustee that is inconsistent with maintaining the trust, "including dissipation of trust assets," is unlawful under the PACA.  *Id.*  The regulations define "dissipation" as "any act or failure to act which could result in the diversion of trust assets or which could prejudice or impair the ability of unpaid suppliers, sellers, or agents to recovery money owed."  *Id.* § 46.46(a)(2).  Moreover, the PACA renders it unlawful for any purchaser to fail to "make full payment promptly" to the seller of perishable agricultural commodities.  7 U.S.C. § 499b(4); *see also* 7 C.F.R. § 46.2(aa) (providing time periods for prompt payment).

The PACA requires sellers to provide purchasers with "written notice of intent to preserve the benefits of the trust."  7 U.S.C. § 499e(c)(3).  That notice may be provided in two ways.  First, as was the case here, a seller may include the required statutory language in "ordinary or usual billing or invoice statements" that are provided to the purchaser.  *Id.* § 499e(c)(4).  Second, a seller may send the purchaser a Notice of Intent to Preserve PACA Trust Rights within thirty days from the date payment is due.  7 C.F.R. § 46.46(f)(2).  The PACA confers district courts with jurisdiction over "actions by trust beneficiaries to enforce payment from the trust." 7 U.S.C. § 499e(c)(5).

As detailed above, there is no genuine issue of material fact that Buck's purchased and received quantities of produce from the plaintiffs and the intervenor-plaintiff in interstate commerce. Moreover, it undisputed that the parties were subjected to the PACA and licensed thereunder. It is also undisputed that the plaintiffs and the intervenor-plaintiff preserved their trust interests by including the required statutory language in their invoices. More importantly, Buck's has admitted that it has failed to tender full payment to the plaintiffs and the intervenor-plaintiff. It has specifically admitted that it owes Basciani and Horton the total invoiced amounts of $25,332.15 (Docket 35-1, Req. for Admis. Nos. 3 - 6); *see also* Fed. R. Civ. P. 36(a)(3) ("A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter . . . ."). As for Monterey, it claims that it was not paid $29,865.75 that it is owed, but Buck's has only admitted that it owes Monterey $29,120.10. (Docket 37-2, Defs.' Resp. to Req. for Admis. No. 2.) Notwithstanding the disputed amount, Buck's has admitted that it unlawfully failed to tender prompt and full payment to Monterey.

Furthermore, there is no genuine issue of material fact as to the individual liability of defendants Roy and Blatt, given that they were in a position to control the PACA trust assets. An individual who is in a position to control the assets of a PACA trust and fails to preserve those assets may be held personally liable to the trust beneficiaries for breach of fiduciary duty. *See, e.g.*, *Golman-Hayden Co. v. Fresh Source Produce Inc.*, 217 F.3d 348, 351 (5th Cir. 2000). Because this individual liability stems from trust law, rather than from the doctrine of piercing the corporate veil, it is irrelevant whether the individual's failure to control the trust assets was intentional or whether

the individual was otherwise a responsible corporate officer.  *See Red's Market v. Cape Canaveral Cruise Line, Inc.*, 181 F. Supp. 2d 1339, 1344 (M.D. Fla. 2002).

In this case, the defendants have admitted that Roy was an officer, director, or stockholder of Buck's with the authority to control the company's financial matters.  (Docket 35-1, Req. for Admis. Nos. 7, 9, 11, 13.)   As to Blatt, the defendants have admitted only that he was an "employee," and have denied that he was an officer, director, or shareholder.  (Docket 37-2, Defs.' Resp. to Req. for Admis. No. 11.)[2]  Nevertheless, the only permissible inference to be drawn from the uncontroverted evidence is that Blatt was in a position of control over the PACA trust assets. Blatt is listed as "Vice President" of Buck's with the West Virginia Secretary of State and in the "Blue Book," a credit information publicaiton.  Blatt is also listed alongside Roy as a "Reported Principal" on Buck's PACA license (Docket 35-4), has signature authority with respect to Buck's checks, and even attested as Vice President of Buck's to the defendants' discovery responses in the instant litigation.   In short, the uncontroverted evidence before the court shows that both Roy and Buck possessed authority and control over the PACA trust assets.

Because there is no genuine issue of material fact as to the elements of the PACA trust claim, therefore, the plaintiffs are entitled to summary judgment against the defendants in the amount of $25,332.15.  The interevenor-plaintiff is entitled to summary judgment against the defendants in the amount of $29,120.10.

B.      *Interest and Costs*

---

[2] Actually, the defendants' admissions concerning Blatt are in tension.  Because they failed to respond to the plaintiffs' Requests for Admission, the defendants have admitted, pursuant to Federal Rule of Civil Procedure 36(a)(3), that Blatt is an officer, director, or stockholder of Buck's with authority to control its financial matters.  (Docket 35-1, Req. for Admis. Nos. 8, 10, 12, 14.)

In addition to the payments due, the plaintiffs and the intervenor-plaintiff seek pre-judgment interest and costs, including attorneys' fees, from the defendants.  The PACA provides that the statutory trust continues "until full payment of the sums owing in connection with" a perishable agricultural commodities transaction has been received by the seller.  7 U.S.C. § 499e(c)(2). Pursuant to the statute's "in connection with" language, courts have ruled that a PACA trust beneficiary can recover attorneys' fees and pre-judgment interest, if provided for by the parties' contract, in connection with a PACA trust claim.  *See, e.g.*, *Coosemans Specialities, Inc. v. Gargiulo*, 485 F.3d 701, 708 (2d Cir. 2007) ("[W]here the parties' contracts include a right to attorneys' fees, they can be awarded as 'sums owing in connection with' perishable commodities transactions under PACA."); *Country Best v. Christopher Ranch, LLC*, 361 F.3d 629, 632 (11th Cir. 2004); *Middle Mountain Land & Produce v. Sound Commodities Inc.*, 307 F.3d 1220,  1222 (9th Cir. 2002).  In light of the unambiguous statutory text, as well as the legislative purpose behind the PACA, these courts have determined that a PACA trust claimant can recover for related expenses, including "attorney fees and interest that buyers and sellers have bargained for in their contracts." *Country Best*, 361 F.3d at 632.

In this case, the plaintiffs and the intervenor-plaintiff claim that the terms of the parties' contracts called for the payment of interest and attorneys' fees in connection with any outstanding debt.  Indeed, representatives for Basciani and Horton have submitted declarations asserting that each of the invoices sent to the defendants "contained the contracted terms that Defendants were required to pay [the seller] interest on all outstanding invoices at 18% per annum and all collection costs, including reasonable attorneys' fees, incurred" in collecting any debt owed to them.  (Docket 35-1, Basciani Decl. ¶ 11; Docket 35-2, Woodward Decl. ¶ 11.)  In support of that claim, the

plaintiffs have submitted the invoices that supposedly contain those terms.  It appears that counsel

for the plaintiffs may have inadvertently attempted to mislead the court, however, for the submitted

invoices do not support the claims in the declarations. Indeed, none of the Basciani invoices refer

to interest, costs, or attorneys' fees.  (Docket 35-1, Ex. 2.)  Under the column "TERMS," each

Basciani invoice merely states "NET 21."  (*Id.*)  The Horton invoices are similarly devoid of any

reference to collection costs or attorneys' fees, although they do mention interest. (Docket 35-2, Ex.

2.) After "Terms," the Horton invoices state "Weekly - Finance charge after this period 1 ½ % per

month or fraction thereof; Annual Rate 18%." (*Id.*)  Simply put, these materials, standing alone, do

not support the plaintiffs' claim that Buck's agreed to pay collection costs, including attorney's fees,

in connection with debts owed to the plaintiffs.  Horton, however, has demonstrated that its contracts

with the defendants included a term providing for the payment of pre-judgment interest.  Upon

Horton's submission of an accounting of the pre-judgment interest it is owed, the court will render

judgment on that request.

    Monterey's invoices, on the other hand, clearly set forth terms concerning both interest and

costs.  (Docket 37-6.)  Each Monterey invoice contains the following terms:

> Finance charges will accrue on any past-due balance at the rate of 1 ½ % per month
> (18% per annum) from the date each invoice becomes past due, or the maximum rate
> of interest allowable by law, and will be computed daily and compounded annually.

> In the event any action or proceedings is commenced to enforce the terms of this
> transaction or to enforce our PACA trust rights, buyer agrees to pay all costs of
> enforcement, including all attorneys' fees, together with any costs or expenses, as
> additional sums owed in connection with this transaction.

(*Id.*)  These terms are sufficient to entitle Monterey to recover both pre-judgment interest and the

costs, including attorneys' fees, associated with collecting on its debt from the defendants.

Accordingly, upon Monterey's submission of an accounting of its pre-judgment interest and costs, including attorneys' fees, the court will render judgment on those items.

## IV.    Conclusion

For the reasons stated above, the plaintiffs' Motion for Summary Judgment and the intervenor-plaintiff's Motion for Summary Judgment are hereby **GRANTED**.  The court **DIRECTS** Horton and Monterey to file an accounting of pre-judgment interest within thirty (30) days.  The court further **DIRECTS** Monterey to file an accounting of costs and attorneys' fees within thirty (30) days.  Upon receiving that information, the court will enter an appropriate judgment order. Additionally, the court **CANCELS** the pretrial conference set for October 4, 2010.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        September 16, 2010

Joseph R. Goodwin, Chief Judge